IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS GUTH, HEMPSTEAD HOMES, LLC, TEXAS VARGAS ELECTRICAL AND KIND PLUMBING | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 4:17-CV-01100 |
| MAYOR AND CITY MANAGER MICHAEL WOLFE FOR THE CITY OF HEMPSTEAD, TEXAS, PERMIT DIRECTOR KOLLYE KILPATRICK AND PERMIT ISSUER GLORIA BOON, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS

This matter was referred by United States District Judge Vanessa D. Gilmore, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #17). In this case, Plaintiffs Thomas Guth, Hempstead Homes, LLC, Texas Vargas Electrical, and Kind Plumbing (collectively, "Plaintiffs") bring claims against Defendants Michael Wolfe, Mayor and City Manager for the City of Hempstead, Kollye Kilpatrick, Permit Director, and Gloria Boone, Permit Issuer (collectively, "Defendants")[1] for civil rights violations under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ["ADA"] 42 U.S.C.A. § 12101, *et seq.*, as amended. Pending before the court is a motion to dismiss, which was filed by Defendants. (Defendants' Motion to Dismiss for Failure to State a Claim ["Motion to Dismiss"], Docket Entry #14). Plaintiffs have responded. (Plaintiff's Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss ["Response"], Docket Entry

---

[1] Plaintiffs have not specified whether they have sued Defendants in their individual or official capacities.

#19). After reviewing the pleadings and the applicable law, it is **RECOMMENDED** that Defendants' motion be **GRANTED**, and that this case be **DISMISSED**, with prejudice.

**Background**

This litigation arises out of the administration of municipal building and inspection permits. Plaintiff Hempstead Homes, LLC ["Hempstead Homes"] is a small home builder. (Plaintiffs' First Amended Complaint ["Amended Complaint"] ¶ 6, Docket Entry #11). In December, 2015, Hempstead Homes acquired a 17-acre tract of land in Hempstead, Texas, to develop as a residential area. (Writ of Mandamus to Compel Public Officials to Perform Ministerial Acts to Issue Building Permits, Perform Inspections on Previously Issued Permits, Provide Addresses for City Lots and Provide Utility/Road Costs for Lots ["Writ of Mandamus"] at 5, Docket Entry #1). Since that time, Hempstead Homes has purchased additional acreage for this venture, and it now owns approximately 100-acres of land in the area. (Amended Complaint ¶ 6; Writ of Mandamus at 5). Plaintiffs Kind Plumbing and Vargas Electrical were hired by Hempstead Homes to perform plumbing and electrical services for the homes in the development. (Amended Complaint ¶7). On December 30, 2016, Plaintiff Thomas Guth ["Guth"] executed a contract to purchase a new house in the Hempstead Homes project. (Amended Complaint ¶ 6, Writ of Mandamus at Exhibit 4).

Under Hempstead municipal regulations, a real estate developer is required to obtain a building permit, before constructing a house, as well as electrical and building inspections of the premises, after the structure is completed. (Hempstead, Tex., Ordinance 00-113 (August 21, 2000), *available at* http://12.39.172.108/adobe1/permits/manufactured-homes.pdf, last visited September 14, 2017). On February 16, 2017, Hempstead Homes submitted an application for a building permit,

2

so that it could begin construction of Guth's residence.² (Supplemental Exhibits to Defendants' Motion to Dismiss ["Defendants' Supplement"], at Ex. 1, pg. 2, Docket Entry #20; Defendants' Supplement, at Ex. 2, pg. 2). On February 27, 2017, Hempstead Homes submitted applications for electrical and plumbing permits to cover the house at 1202 19th Street, and for an electrical permit for the house at 1222 19th Street. (*Id.* at Ex. 1, pg. 4, 6, *Id.* at Ex. 2, pg. 4). The next day, on February 28, 2017, an application was made for a plumbing permit for a home at 1222 19th Street. (*Id.* at Ex. 2, pg. 6).

On March 10, 2017, building, electrical, and plumbing permits were issued for the homes at 1202 19th Street and 1222 19th Street. (*Id.* at Ex. 1, pg. 2, 3, 5, *Id.* at Ex. 2, pg. 1, 3, 5). On April 17, 2017, the City performed an electrical inspection of the properties at 1202 19th Street and 1222 19th street, and determined that the electrical services had been satisfactorily performed. (*Id.* at Ex. 1, 10, *Id.* at Ex. 2, 9). On April 30, 2017, after inspection, the City found that the plumbing services at those homes had been adequately completed, as well. (*Id.* at Ex. 1, 9, *Id.* at Ex. 2, 8).

Notwithstanding the fact that their applications were approved, Plaintiffs allege that the City refused to process their permit requests. (Amended Complaint ¶¶8, 24; Writ of Mandamus at 7). They claim that a representative from Hempstead Homes met with Kilpatrick, the City's permit director, several times, to inquire about the status of their applications. (*Id.*). Guth, apparently "grew tired of the delays," and so, in March, 2017, he went to Hempstead to discuss the problem with Kilpatrick directly. (Amended Complaint ¶24; Writ of Mandamus at 7).

During the meeting, Guth noticed that the men's restroom was "a broom closet," and he

---

²On that date, Hempstead Homes submitted building permit applications for two homes, 1202 19th Street, Humble, Texas, 77338, and 1222 19th Street, Humble, Texas, 77338. (Defendants' Supplement at Ex. 1, pg. 2, Ex. 2, pg. 2). It is unclear from the record which of these structures was built for Guth's use.

3

promptly informed Kilpatrick that the City's facilities did not meet the architectural standards under the Americans with Disabilities Act. (Amended Complaint ¶25). Following that meeting, Guth wrote a letter to the Civil Rights Division at the Department of Justice, complaining about the inadequate restrooms at the Hempstead City Hall. (Writ of Mandamus at Ex. 4, 20-27).

On April 10, 2017, Plaintiffs filed a petition for a writ of mandamus in this court, raising constitutional claims for violations of the Fourteenth Amendment of the United States Constitution. (Writ of Mandamus at 3-4). Plaintiffs ask the court to order the City to issue the requested permits, to perform the required inspections, to issue addresses for the Hempstead Homes lots, and to provide a "breakdown of costs" for utilities installation and road construction. (*Id.* at 21). On April 18, 2017, Defendants objected to the writ of mandamus, arguing that federal courts lack subject matter jurisdiction and any authority to issue a writ compelling state or local action. (Defendants' Memorandum of Law in Opposition to Plaintiffs' Request for Mandamus ["Objection to Writ of Mandamus"] at 1). This court denied Plaintiffs' request for mandamus relief on the same day. (Docket Entry #10).

One week later, on April 25, 2017, Plaintiffs filed an amended complaint. In that complaint, Plaintiffs lodged claims under 42 U.S.C. § 1983, for violations of their Fourteenth Amendment right to substantive due process and equal protection, as well as a claim under Title II of the Americans with Disabilities Act ["ADA"] 42 U.S.C.A. § 12101, *et. seq.,* as amended. Plaintiffs now request damages for the diminution in the value of their land in the residential development, infrastructure development costs, as well as impact, professional, and attorneys' fees. (Amended Complaint ¶29, 30). Plaintiffs also ask the court to order Defendants to approve the permit applications that were submitted on February 16, 2017. (Amended Complaint ¶31).

4

Plaintiffs contend further that the City of Hempstead "delayed issuing" the permits that Hempstead Homes requested, and that it "refuses" to perform electrical and plumbing inspections of the services that were performed pursuant to those permits. (Amended Complaint ¶8). They claim that, by submitting permit applications, they acquired a statutorily "vested right[]" in them. (Amended Complaint ¶21). Plaintiffs insist that the City's failure to promptly approve their applications is a violation of their right to substantive due process. (Amended Complaint ¶15). Plaintiffs contend further that other, similarly situated home builders were given permits without delay. (Amended Complaint ¶17, 19). They maintain that the City has violated their right to equal protection of the laws, by subjecting them to disparate treatment. (*See* Amended Complaint 20). Plaintiffs also allege that the City has not provided property addresses for Hempstead Homes' lots, and that it has likewise not disclosed the cost of utilities and road construction in that development. (Amended Complaint ¶8). They also complain that the City has violated their "statutorily vested rights" which are secured under Texas Local Government Code §245.002.

On May 17, 2017, Defendants filed this motion to dismiss, for failure to state a claim, under Federal Rule of Civil Procedure 12 (b)(6). At the outset, Defendants point out that Plaintiffs' claims must fail, because all of Hempstead Homes' permit and inspection applications have been approved. (Motion to Dismiss at 9-10). They also contend that any "delay" in the approval of the permit applications was not an "adverse action" as defined under the ADA. (*Id*. at 10-11). Next, Defendants insist that Plaintiffs' substantive due process claim must fail, because Plaintiffs do not have a protected property interest in the building, plumbing, or electrical permits. (*Id*. at 11-13). Defendants claim further that, even if they have a protected property interest in the permits, Plaintiffs have not shown that the City's administrative decisions regarding those permits are not rationally related to

a legitimate government interest. (*Id*. at 13). Defendants contend that Plaintiffs' equal protection claim must fail, as well, because they have not shown that they were treated differently from other, similarly situated home builders. (*Id*. at 14-15). In their final argument, Defendants insist that, even if Plaintiffs are able to state claims under the ADA and the Fourteenth Amendment, they are entitled to qualified immunity from liability on those allegations. (*Id*. at 15-18). Having considered the pleadings and the applicable law, the court finds that Plaintiffs have failed to state a claim for which relief can be granted, and recommends that this case be dismissed, with prejudice.

**Standard of Review**

In ruling on a 12 (b)(6) motion, the court must accept all "well-pleaded facts" as true, "'viewing them in the light most favorable to the plaintiff[s],'" and drawing all inferences in their favor. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *accord In Re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court, however, need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc*., 407 F.3d 690, 696 (5th Cir. 2005); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 677-79, 129 S.Ct. 1937, 173 L.Ed. 868 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)); *accord Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). A claim is "plausible on its face" when the plaintiff "'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678). The standard of plausibility "is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that the defendant[s] ha[ve] acted unlawfully." *Iqbal*, 556 U.S. at 678-79; *accord Wilson*, 667 F.3d at 600. "Where a complaint pleads facts that are 'merely consistent with' [defendants'] liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). In such a case, the complaint is subject to dismissal under Rule 12 (b)(6). *See id*. Nonetheless, "a motion to dismiss under Rule 12 (b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co*., 563 F.3d 141, 147 (5th Cir. 2009)); *accord Lormand v. US Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009); *Collins*, 224 F.3d at 498.

Generally, in ruling on a Rule 12 (b)(6) motion, the court may not look beyond the pleadings. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "Pleadings," for purposes of a Rule 12 (b)(6) motion, include those "documents attached to the complaint, [] documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff[s'] claims,[] matters of public record[,]" and those "items appearing in the record of the case[.]" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011); *Turner Indus. Group, LLC v. Int'l Union of Operating Engineers, Local 450*, 8 F.Supp.3d 875, 883 (S.D. Tex. 2014) (citing *Lone Star*, 594 F.3d at 387); *Meyers v. Textron, Inc*., 540 Fed. Appx.408, 409 (5th Cir. 2013) (citing 5B FED. PRAC. & PROC. CIV. § 1357 (3rd ed.). A court may consider such documents without converting the motion to dismiss to a motion for summary judgment under Rule 56. FED. R. CIV. P. 12 (d); *see Dillon v. Rogers*, 596 F.3d. 260, 271 (5th Cir. 2010).

In their motion to dismiss, Defendants refer to the approved permits and inspection records that are at issue in this case. Defendants filed copies of those items independently, as supplemental

exhibits, and they were not attached to the motion to dismiss. However, because the approved permits and inspection records do appear in the case record, the court may consider them without converting the motion to one for summary judgment. *HRD Corp. v. Bagherzadeh*, 822 F.Supp.2d 667, 669 (S.D. Tex. 2011) (quoting *Meador v. Oryx Energy Co.*, 87 F.Supp. 2d 658, 661 (E.D. Tex. 2000) ("[T]he court may consider. . . items appearing in the record of the case[.]"). Moreover, these documents are matters of public record, which the court may take judicial notice of, and it need not convert Defendants' motion to dismiss to one for summary judgment. FED. R. EVID. 201; FED. R. CIV. P. 12 (d). For these reasons, the court may consider the permits and inspection records about which Plaintiffs complain.

**Discussion**

*ADA Claim*

Guth claims that Defendants have violated his rights as a disabled individual under Title II of the Americans with Disabilities Act. (Amended Complaint ¶¶22-28). Title II provides that qualified individuals with disabilities shall not " be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. The basis of Guth's ADA claim rests solely on his alleged inability to access the men's restroom at the Hempstead City Hall. (*See* Amended Complaint ¶¶23, 25, 28). He alleges, specifically, that those facilities do not comply with the ADA's architectural standards, and that, as a result of those poor restroom accommodations, he does not have access to the City's permitting services. (Amended Complaint ¶ ¶25, 28). It is unclear from the current pleadings whether Guth intends to state a claim for a discriminatory exclusion from municipal services, or one for retaliation. However, in either circumstance, he has failed to state a claim for

relief.

> *Exclusion from Municipal Services*

To establish a violation of Title II, a claimant must demonstrate: (1) that he is a qualified individual within the meaning of the Act; (2) that he is being excluded from participation in, or being denied the benefits of services, programs, or activities for which the State is responsible, or is otherwise being discriminated against by the State;[3] and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). Defendants do not dispute that Guth is a qualified individual under the Act. However, they point out that Plaintiffs "have received all of the [] permits for [Guth's] property[,]" and that the plumbing and electrical inspections have been performed without delay. (Motion to Dismiss at 9-10).

Here, the record clearly shows that Plaintiffs' building, electrical, and plumbing permits were issued on March 10, 2017. (Defendants' Supplement, at Ex. 1, pg. 2, 3, 5, Ex. 2, pg. 1, 3, 5). The City performed electrical inspections on Plaintiffs' property on April 17, 2017. (*Id*. at Ex. 1, 10, Ex. 2, 9). Approximately two weeks later, on April 30, 2017, plumbing inspections took place on those properties. (*Id*. at Ex. 1, 9, Ex. 2, 8). Because each of Plaintiffs' permit applications and inspection requests was approved, they cannot maintain an ADA claim based on the denial of those benefits. Further, Plaintiffs have not alleged any facts to show that the alleged delay in awarding the permits is because of his disability. For these reasons, this claim should be dismissed.

---

[3] It is unclear whether Plaintiffs intend to bring claims against Defendants in their individual or official capacities. However, it is well established that only public entities are subject to liability under Title II. *City and County of San Francisco, California, et al. v. Sheehan*, 135 S.Ct. 1765, 1773, 191 L.Ed.2d 856 (2015). For that reason, to the extent that Guth has alleged claims against Defendants in their individual capacities, those claims should be dismissed.

*Retaliation*

The ADA also protects individuals from retaliation for opposing any act that is illegal under the ADA or for participating in an investigation, proceeding, or hearing under that Act. 42 U.S.C.A. § 12203. The elements of a prima facie case of retaliation are :1) a protected activity; 2) an adverse action; and 3) a causal connection between the two. *Ariel B. Ex. Rel. Deborah B. V. Fort Bend Independent School District*, 428 F.Supp.2d 640, 665 (S.D. Tex. 2006). This circuit has not defined the term "adverse action" in the context of municipal licensing. However, in the employment context, an adverse action is any decision that constitutes "a significant change in [] status" or that cause[s] a significant change in benefits." *Id.* (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Indeed, a decision cannot be considered adverse if the complainant's benefits are not negatively affected. *See Pegram v. Honeywell, Inc*., 361 F.3d 272, 282 (5th Cir. 2004).

Here, it is clear that Guth has not suffered an adverse action. Plaintiffs' assertion that Guth has been "den[ied][] access to [] permits issued by the City" does not withstand scrutiny. (Amended Complaint ¶28). The permits were not denied. To the contrary, they were issued on March 10, 2017, just days after Guth complained about City Hall's restroom facilities. (Defendants' Supplement, at Ex. 1, pg. 2, 3, 5, Ex. 2, pg. 1, 3, 5). Guth reported the alleged ADA violation to the United States Department of Justice on March 29, 2017, which is well after the permits were issued. Further, Plaintiffs have not presented any facts to establish a causal connection between the City's action and Guth's complaint. They have not shown that the alleged period of "delay"[4] between the submission

---

[4]The permits were issued within one month of the application submissions. (Defendants' Supplement, at Ex. 1, pg. 2, 3, 5, Ex. 2, pg. 1, 3, 5). The inspections were completed on April 30, 2017, less than two months after the building permits were awarded. (*Id*. at Ex. 1, 9, 10, Ex. 2, 8, 9).

of the permit applications and the provision of the permits was motivated by retaliation. Indeed, they have wholly failed to allege any facts to show that Defendants interfered in the permit assessment process. On these facts, Plaintiffs have failed to establish a chronology of events from which retaliation can plausibly be inferred. Because the permits were approved after Guth lodged a complaint about the City's restrooms, Plaintiffs cannot state a claim for retaliation, based on those accusations. *Yerby v. University of Houston*, 230 F.Supp.2d 753, 767-68 (S.D. Tex. 2003) (delayed approval of employee transfer was not adverse employment action, under Title VII, when employee's transfer request was made after she complained of discrimination, and plaintiff failed to present evidence to show that delay of administrative transfer was motivated by retaliation).[5] Accordingly, this claim should be dismissed.

*Section 1983 Claims*

Plaintiffs also claim that Defendants violated their federal constitutional rights by denying their permit and inspection requests. (Amended Complaint ¶¶13-16). They claim that the City's "denial" led to a diminution in the value of their property. (Amended Complaint ¶29). Plaintiffs bring these claims under § 1983 of the Civil Rights Act of 1871, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983; *see Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724, 727 n.3 (5th Cir.

---

[5] It is well established that "'the ADA is part of the same broad remedial framework as . . . Title VII, and that all anti-discrimination acts have been subjected to similar analysis.'" *Flowers v. Southern Regional Physician Services Inc.*, 247 F.3d 229, 234 (5th Cir. 2001) (quoting *Miller v. Pub. Storage Mgmt., Inc.*, 121 F.3d 215, 218 (5th Cir. 1997)).

11

2009). Section 1983 is clearly meant "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights, and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct.1827, 118 L.Ed.2d 504 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)). It should be emphasized, however, that the civil rights statutes are not themselves the source of substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct.807, 127 L.Ed.114 (1994). Instead, these statutes merely provide a method for vindicating federal rights that are conferred elsewhere. *See id*. In this case, Plaintiffs allege that Defendants violated their right to substantive due process and equal protection of the law guaranteed by the Fourteenth Amendment of the United States Constitution. (Amended Complaint ¶¶ 13-19).

*Substantive Due Process*

"'The Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power or employing it as an instrument of oppression.'" *Santibanes v. City of Tomball, Tex.*, 654 F.Supp.2d 593, 608 (S.D. Tex. 2013) (quoting *Collins v. Harker Heights, Tex.*, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Substantive due process prohibits arbitrary, wrongful government actions that deprive individuals of constitutionally protected rights. *Maryland Manor Associates v. City of Houston*, 816 F.Supp.2d 394, 406 (S.D. Tex. 2011); *Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000). "In the context of a land use regulation, [] a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrary or capricious." *Maryland Manor*, 816 F.Supp.2d at 406 (internal quotations omitted). To survive a substantive due process challenge, the governmental decision must be "rationally related to a legitimate government interest." *Vineyard Investments, L.L.C. v. The City of Madison, Miss*, 440 Fed.Appx. 310, 313 (5th

12

Cir. 2011). In this inquiry, the only relevant question is whether a rational relationship exists between the decision and a conceivably legitimate government objective. *Simi. Inv.*, 236 F.3d at 251. However, if the question is at least debatable, there is no substantive due process violation. *Id.*

To establish a due process violation, a claimant must first show that he or she has been deprived of a protected interest in property or liberty. *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)). Such protected interests "are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Blackburn v. City of Marshall*, 42 F.3d 925, 936-37 (5th Cir. 1995). The plaintiff must first demonstrate a protected property right by alleging a "legitimate claim of entitlement" to the interest alleged. *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003). "A claim to entitlement arises [] when a statute or regulation places substantial limits on the government's exercise of its [] permitting [] discretion." *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 226 (5th Cir. 2008).

Plaintiffs here maintain that they have a constitutionally protected property interest in the "lawful use, enjoyment, and development of [their] property[.]" (Amended Complaint ¶16). They complain that Defendants violated those rights by denying their permit applications. (Amended Complaint ¶15). On the other hand, Defendants insist that a building permit is not a constitutionally protected interest, because a permit applicant does not have a vested property interest in a permit. (*See* Motion to Dismiss at 13) (citing *Snook v. City of Missouri City, TX*, No. Civ.A.H 03 243, 2003 WL 25258302, at * 24-25).[6]

---

[6]It should be noted, again, that all permits about which Plaintiffs complain have been issued. As such, Plaintiffs' cannot legitimately claim that their rights have been violated due to any permit denial.

13

Further, under Texas law, a municipality must either grant or deny a building permit application no later than 45 days following the application. TEX. LOC. GOV'T CODE § 214.904(a),(b)(1); *Town of Lakewood Village v. Bizios*, 493 S.W.3d 527, 534 (Tex. 2016). If a municipality declines to award the permit, it must "provide written notice to the applicant stating the reasons why [it is] unable to grant [] the permit[.]" TEX. LOC. GOV'T CODE §214.904(b)(2). This language is clear that a municipality may exercise its discretion in awarding a construction permit. The statute does not contain any "explicitly mandatory language" or specific directives to the municipality regarding its assessment of permit applications. *Chavers v. Morrow*, 354 Fed.Appx. 938, 941 (5th Cir. 2009) (citing *Ridgley v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008)). Because the statute places no limits on the City's licensing discretion, Plaintiffs do not have a constitutionally protected property interest in building and utility permits.[7] *Hampton Co.*, 543 F.3d at 226 ("No discretion in the official [] [is a] central element[] of a protected property interest"); *Horton v. City of Smithville*, 117 Fed.Appx. 345, 348 (5th Cir. 2004) ("discretionary statutes do not give rise to constitutionally-protected property interests").

However, even assuming that Plaintiffs do have a protected interest in the permits, they have not stated any facts to show that Defendants' actions were arbitrary or capricious. They assert only that the City's actions "had no foundation in reason and [were] [] [an] arbitrary and capricious [] exercise of power that had no substantial relation to [a legitimate government interest.]" (Amended Complaint ¶15). Without factual support for those allegations, Plaintiffs' threadbare recitals do not

---

[7]Plaintiffs also claim that their statutorily "vested right[]" in the permits was violated by the City's "denial" of their permit applications. TEX. LOC. GOV'T CODE §245.002(a). This provision, however, merely ensures a permit applicant that, if a regulatory agency changes its land-use regulations after receiving a particular development application, the new regulations cannot be enforced to the detriment of the applicant. *City of Floresville v. Starnes Investment Group, LLC*, 502 S.W.3d 859, (Tex. App. — San Antonio 2016, no pet.). That statute has no bearing on whether a municipality has discretion to approve or deny a permit application.

adequately state a claim for relief. *Iqbal*, 129 S.Ct. at 1940. In addition, the City's legitimate governmental interest in regulating the management and use of land within its boundaries is rationally related to its permitting decisions. *See TexCom Gulf Disposal, LLC v. Montgomery County*, Tex., H-13-2789, 2014 WL 2931943, at *10 (S.D. Tex. June 27, 2014) (managing land use is a legitimate government interest); *Persyn v. U.S.*, No. 97-50108, 1998 WL 110022, at *1 (5th Cir. 1998) (controlling economic and land development and stabilizing current uses of land are legitimate government interests); *Jackson Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1077-78 (5th Cir. 1989) (protecting residential integrity is a legitimate government interest). Plaintiffs have alleged no facts whatsoever to suggest that the City's alleged delay in issuing its permits is not rationally related to a legitimate government interest. On this record, Plaintiffs have not stated a claim for a substantive due process violation. For that reason, that claim should be dismissed.

### *Equal Protection*

"The Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently." *John Corp. v. City of Houston*, 214 F.3d 573, 583 (5th Cir. 2000). To state an equal protection claim, a plaintiff must allege that it "received different treatment from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 222 (5th Cir. 2012). Similarly, to state a "class of one" equal protection claim, the claimant must allege that it was treated differently from others who are similarly situated and that "there was no rational basis for the disparate treatment." *Stotter v. Univ. of Texas as San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060

(2000)).

Here, Plaintiff Hempstead Homes alleges that it has been treated "differently from other similarly situated landowners without any rational [] basis[.]" (Amended Complaint ¶17). Plaintiffs identify Randy Malouf Builders ["Malouf"] as a homebuilder that was treated more favorably than Hempstead Homes. (Amended Complaint ¶ 19). Although both homebuilders' permit applications were ultimately approved, Malouf's applications were granted on the day that they were filed, while Hempstead Homes' applications were approved twenty-three days after submission. (Defendants' Supplement, at Ex. 1, pg. 2, 3, 5, Ex. 2, pg. 1, 3, 5; Writ of Mandamus at Ex. 4, pg. 58-68). Plaintiffs maintain that this delay was "irrational" and not related to a "legitimate state interest." (Amended Complaint ¶¶17, 19).

Plaintiffs, however, have not alleged facts to show that Malouf was sufficiently similar to be classified as "similarly situated" for equal protection purposes. Malouf received building permits to construct $85,000 homes in Hempstead, Texas, while Hempstead Homes' obtained permits to build $120,000 homes in Humble, Texas. (Writ of Mandamus at Ex.4, pg. 58-68; Defendants' Supplement Ex. 1, pg. 1, Defendants' Supplement Ex. 2, pg. 9). In addition, the Hempstead Homes properties were subject to a twenty-five foot setback requirement. (Defendants' Supplement Ex. 1, pg. 1, Ex. 2, pg. 9). It is apparent, then, that the location and value of these homes, as well as the layout of the parcels, are materially different. On this record, Plaintiffs have not alleged facts to establish that the Malouf applications are sufficiently similar to the Hempstead Homes applications to support an equal protection claim. For that reason, Plaintiffs' equal protection claim should be dismissed. *TexCom Gulf Disposal*, 2014 WL 2931943, at *12 (dismissing plaintiff's equal protection claim where complaint failed to allege facts to show that other commercial developers were

sufficiently similar to substantiate an equal protection claim).

In sum, each of Plaintiffs' claims fail. The ADA claim for exclusion from municipal services should be dismissed, because Guth cannot show that he was, in fact, excluded from any government benefit. Likewise, the retaliation claim must fail, because Guth cannot show that he suffered an adverse action as a result of his complaints about the facilities at City Hall. Plaintiffs' substantive due process claim should be dismissed, because they do not have a constitutionally protected property interest in the contested municipal permits. Even assuming that they do have such a right, they cannot show that Defendants acted arbitrarily in evaluating their permit applications. Nor can they establish that the City was not acting pursuant to a legitimate government interest in assessing their requests. The equal protection claim must fail, because Plaintiffs have not alleged facts to show that the identified comparator was sufficiently similar for equal protection purposes. On this record. Plaintiffs have failed to state a claim for which relief can be granted.

The court recommends that Defendants' motion to dismiss be granted, with prejudice, because further amendment would be futile. The record plainly shows that all of the permit applications and inspection requests that are at issue in this suit were approved before Plaintiffs filed their amended complaint. Further, Plaintiffs seek relief identical to that which was denied by this court on April 18, 2017. They have nonetheless continued to pursue claims that are wholly without merit. Even if given the opportunity to amend their pleadings, Plaintiffs cannot state a viable claim for relief. For these reasons, each of Plaintiffs' claims against Defendants should be dismissed, with prejudice. [8]

---

[8] Leave to amend need not be granted if a claim is futile. *See Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 872-73 (5th Cir. 2000).

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED**, and that this case be **DISMISSED** with **prejudice**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 15th day of September, 2017.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**